[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has brought an action against his former employer, the defendant John Armstrong, the Commissioner of the Department of Correction, claiming that he was wrongfully discharged in violation of General Statutes § 31-290a from his employment as a correction officer because he filed a claim for worker's compensation benefits. The defendant has denied the plaintiff's claim. The action was tried to the court. Based on the evidence presented, the court finds the issues asserted in the plaintiff's complaint in favor of the defendant.
The plaintiff was employed as a correction officer from 1987 until he has terminated from his employment by the defendant on April 5, 1994. The plaintiff contends that he was discharged from employment because he filed a claim for worker's compensation benefits as a result of anxiety and depression caused by a fellow employee's threatening behavior. The defendant asserts that the plaintiff's employment was terminated because the plaintiff failed to return to work or provide a medical certification that the was unable to return to work despite repeated demands to do so.
Section 31-290a(a) provides that "No employer . . . shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits . . ." The burden of proof requirements in actions brought pursuant to § 31-290a are set forth in Ford v. Blue Cross BlueShield of Connecticut, Inc., 216 Conn. 40, 53 (1990) and based on the principles first established in McDonnell Douglas Corporation v. Green,411 U.S. 792 (1973). "The plaintiff bears the initial burden of proving CT Page 12804 by the preponderance of the evidence a prima facie case of discrimination. . . . In order to meet this burden, the plaintiff must present evidence that gives rise to an inference of unlawful discrimination. . . . If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy [the] burden of persuading the factfinder that [the plaintiff] was the victim of discrimination either directly by persuading the court or jury that a discriminatory reason more likely motivated the employer or indirectly by F showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) Ford v. Blue Cross Blue Shield,Inc. of Connecticut, supra, 53-54. See also Chernovitz v. PrestonTrucking Company, 52 Conn. App. 570, 572 (1999) and Chiaia v. PeppridgeFarm, Inc., 24 Conn. App. 362, 366, cert. denied, 219 Conn. 907 (1991).
The plaintiff began employment with the Department of Correction as a correction officer in 1987. In September of 1992, the plaintiff was injured in a motor vehicle accident and unable to work until December of 1992 when he was authorized by a physician to return to work. On December 2, 1992, prior to returning to work, the plaintiff wrote to Robert J. Gillis, the warden of the New Haven Community Correctional Center, his place of employment, stating that he aspired to be a counselor and requesting a leave of absence, with position held, from January 1, 1993 through December 31, 1993 in order to complete work towards obtaining his associates degree in sociology. The plaintiff had begun classes at Albertus Magnus College to obtain his degree.
On December 10, 1992, the plaintiff arrived at the New Haven Community Correctional Center to pick up his pay check. While there, the plaintiff was confronted by Alan Black, a fellow Department of Correction employee, who physically blocked the plaintiff's path and threatened to kill him. Other Department of Correction personnel intervened and the plaintiff was able to leave the premises. That same day, the plaintiff notified the New Haven police concerning the incident and Black was subsequently arrested.
In a letter dated December 17, 1992, Warden Gillis rejected the plaintiff's request for a one year leave of absence because of staffing needs and the length of leave time requested. On January 22, 1993, the plaintiff visited a walk-in medical center and saw a doctor concerning stress and anxiety related to the threatening incident that occurred on December 10, 1992. The doctor referred the plaintiff to a psychiatrist. CT Page 12805 In a letter dated January 22, 1993, the plaintiff notified Diane Pierpoint, personnel supervisor at the New Haven Community Correctional Center, that he was "withdrawing" his request for educational leave because of his need to seek psychiatric treatment. The plaintiff also provided Pierpoint with a medical certificate dated January 22, 1992 which had been completed by his physician and which stated that he was "unable to work at this time" and that he had been referred to a psychiatrist.
The plaintiff pursued a claim for workers compensation benefits due to the emotional stress he allegedly suffered from the December 10, 1992 incident. He completed a report of occupational injury dated January 22, 1993 and had his doctor fill out a report of injury form[1] On March 25, 1993, the plaintiff requested an informal hearing before the Worker's Compensation Commission which was held on June 21, 1993.
The plaintiff initially sought psychiatric treatment from Dr. George Witt. The plaintiff subsequently obtained the services of Dr. C. Scott Grove and treated with him from April 6, 1993 through July 12, 1993. Dr. Grove diagnosed the plaintiff as suffering from Adjustment Disorder with Mixed Emotional Features, specifically anxiety and depression, and Dr. Grove provided the plaintiff with psychotherapy and medication. On April 25, 1993, Dr. Grove furnished the plaintiff with a report indicating that the plaintiff could return to work in his capacity as a correction officer. However, it was Dr. Grove's recommendation that the plaintiff not return to work at the New Haven Community Correctional Center or any adjacent facility. This report was not sent to the defendant or to any of his employees.
The plaintiff did not return to work at any time after the December 10, 1992 incident. He also did not provide the defendant with any medical certificate after his submission of the initial certificate on January 22, 1993. The plaintiff did submit a request to transfer to another correctional facility. However, he limited his request to a transfer to the Western Substance Abuse Treatment Unit (WSATU), which was the most difficult facility to transfer to because of its popularity. At no time did the plaintiff seek a transfer to any other facility, including those that were not adjacent to the New Haven Community Correctional Center.
On November 12, 1993, Diane Pierpont, on behalf of the defendant, sent the plaintiff a blank medical certificate form and requested that he submit a completed medical certificate verifying his continued inability to return to work. The certificate required that an attending physician or health practitioner explain the reason for the employee's absence from work, certify that the employee is unable to perform the duties of his or her position and indicate when the employee will be able to return to work. Pierpont also enclosed a blank transfer request form so that the CT Page 12806 plaintiff could add facilities to his pending transfer request to WSATU.
The plaintiff sent a letter dated November 23, 1993 to James Huckaby, who was the new warden at the New Haven Community Correctional Center, informing Huckaby that the plaintiff had been cleared by his physician to return to work, but not to the New Haven facility. The plaintiff also acknowledged receipt of the medical certificate form and stated that he would forward the form to his attorney. The plaintiff also stated that he had agreed to submit a transfer request to additional correctional facilities.
By letter dated December 23, 1993, Pierpont again advised the plaintiff that he needed to submit a completed medical certificate to document his inability to work and his eligibility for a continued leave of absence. Pierpont also stated that the Department of Correction would consider the plaintiff's absence from work to be unauthorized if he continued to fail to provide updated medical documentation and that an unauthorized absence of five or more working days could be deemed to be "a resignation, not in good standing."
On January 3, 1994, the plaintiff's attorney in the worker's compensation matter faxed a letter to Pierpont stating that the plaintiff had no desire or intent to resign from employment and that he hoped to transfer to another correctional facility. That same day, Pierpont wrote back and asserted that the plaintiff had consistently failed to submit the required medical documentation for his leave of absence and that he had failed to submit a transfer request to any facility other than WATSU. Nevertheless, Pierpont agreed to continue the plaintiff's leave of absence contingent on the receipt of medical documentation verifying his previous and continued inability to return to his position at the New Haven Community Correctional Center.
Neither Pierpont nor the defendant ever received the requested medical certificate or any documentation containing the requested information. The plaintiff also failed to submit a request to transfer to additional correctional facilities. On April 5, 1994, Huckaby, on behalf of the defendant, sent the plaintiff a letter terminating the plaintiff's employment because of his failure to submit the medical documentation required to verify his absence from work.[2]
The plaintiff claims that his employment was terminated in retaliation for his filing of a claim for worker's compensation benefits. The defendant asserts that the plaintiff's employment was terminated due to his failure to return to work as a correction officer or to submit a medical certificate establishing an inability to return to work. Based upon the evidence presented, I find that the plaintiff was discharged from CT Page 12807 the defendant's employ due to his failure to return to work or to file the requested medical documentation justifying his absence. The defendant's termination of the plaintiff's employment was not motivated in any way by the plaintiff's pursuit of worker's compensation benefits.
The plaintiff contends that he was unable to provide the defendant with the requested medical documentation because he was no longer under a doctor's care due to financial constraints. The plaintiff, however, received treatment from Dr. Grove from April 6, 1993 through July 12, 1993, yet the plaintiff failed to provide the defendant with medical documentation from him. The medical certificate requested by the defendant was not provided by the plaintiff not because it was unavailable to the plaintiff, but because it would not support his continued absence from work. On April 25, 1993 and again on July 12, 1993, Dr. Grove reported in writing that it was his recommendation that the plaintiff return to his position as a correction officer, albeit at a facility other than New Haven. These reports were not provided to the defendant.
The defendant had no intent or desire to return to work as a correction officer. The defendant preferred to be a counselor rather than a correction officer and he had previously requested an educational leave of absence to pursue that career, which the defendant had denied. After the December 10th incident at work, the plaintiff continued attending classes at Albertus Magnus College. Dr. Grove on April 25, 1993 recommended that the plaintiff return to his position as a correction officer but not at the New Haven Community Correctional Center or an adjacent facility. Despite his doctor's recommendation, the plaintiff continued to limit his transfer request to just one correctional facility, WATSU, with full knowledge of the difficulty in obtaining such a transfer. The plaintiff never requested a transfer to any of the other correctional facilities that were not adjacent to New Haven. Rather than desiring to return to work, the defendant hoped to and did pursue a college degree.
The plaintiff bears the burden of proving by a preponderance of the evidence that the defendant discharged him or otherwise discriminated against him because he filed a claim for workers' compensation benefits. Chiaia v. Peppridge Farm, Inc., 24 Conn. App. 362, 366, cert. denied,219 Conn. 907 (1991). See also Erisoty v. Merrow Machine Co.,34 Conn. App. 708, 713 (1994). The facts demonstrate that the plaintiff's application for worker's compensation benefits and his exercise of his rights under the worker's compensation laws played no role in the defendant's termination of the plaintiff's employment. Judgment is therefore entered for the defendant.
CT Page 12808 BY THE COURT
Judge Jon M. Alander